IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

HUEY DAVID BLACKMON,                    )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )    CIVIL ACTION NO. 23-0179-JB-C
                                        )
MAJOR MADISON, *et al.*,                )
                                        )
            Defendants.                 )

## ORDER

This action is before the Court on Defendants' Motion for Summary Judgment and brief in support there of (Docs. 24 and 25), *pro se* Plaintiff's response (Doc. 28), and Defendants' reply and supplemental reply (Docs. 35 and 36). A hearing was held on April 8, 2025, with *pro se* Plaintiff and counsel for Defendants present. After careful consideration of the relevant filings and for the reason stated herein below, Defendants' Motion is **GRANTED in part and DENIED in part**.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

This suit is the culmination of multiple suits filed by Plaintiff, Huey Blackmon ("Blackmon") against Defendants, Terri Smith ("Smith"), William Brown ("Brown"), Major Madison ("Madison"), and Mayor James Perkins ("Perkins"), which were removed to this Court and ultimately consolidated. (*See* Doc. 5). The Complaints collectively sought damages against each Defendant in their personal and professional capacities based on events arising out of Blackmon's contractual employment with the City of Selma and for alleged violations of his Constitutional

Rights.  The causes of action alleged are based on the following facts[1]:

On September 28, 2001, Blackmon entered into a contract with the City of Selma (the "City") when the Selma City Council ("Council") voted to approve a contract effective October 13, 2021 to pay Blackmon to "record live stream and upload video to social media outlets for City Council Meeting, Council Work Sessions, Special Called Meetings, and Committee Meetings." (Docs. 25 and 25-1).  The contract was valid from October 15, 2021, through September 14, 2022 and would result in Blackmon being paid $14,000.00 for twelve months of service.  (*Id*.)

From November 11-13, 2021, videos of Blackmon's daughters were recorded and shared on social media reporting ADA violations with River Park Playground (in Selma).  (Docs. 1-1 and 28-1).  The video resulted in communications with Blackmon and the playground equipment designer to arrange a meeting between Blackmon, the designer, Mayor Perkins and the recreation director.  (Doc. 1-1).  Ultimately, Mayor Perkins did not attend the meeting.  (*Id*.).

On November 23, 2021, Blackmon visited Selma City Hall ("City Hall") to file a public records request.  (Docs. 1-1 and 28).  When he entered the building, Blackmon encountered Defendant Brown, a security guard, working at the front desk.  (Docs. 25, 28, and 28-1).  Brown requested Blackmon sign in on a COVID-19 information sheet before entering City Hall.  (*Doc. 25*.) Blackmon refused to sign-in and informed Brown that signing in was not required.  (Docs. 25, 28, 28-1).  Later, during the same visit, Blackmon informed other City Hall patrons that they did not need to sign in or complete the Covid-19 sheet.  (*Id*.)  Blackmon also recorded the events of

---

[1] Blackmon's response (Doc. 28) did not contain a separately identified narrative of undisputed facts, but did contain multiple exhibits, one of which contained a list of events in time order relevant to this action with supporting video/audio evidence of the relevant interactions between Blackmon and the Defendants. (Doc. 28-1).

November 23, 2021, and his interactions with Brown. (Doc. 28-1). The video recording shows the sign-in sheet and the Covid-19 sheet submitted by others (Docs. 25 and 28-1). Following the events of November 23, 2021, Brown filed charges against Blackmon with the Selma Police Department. (Docs. 25 and 28-1). As a result, an arrest warrant was signed by a Magistrate Judge and issued for Blackmon's arrest. (*Id*.). Blackmon was not arrested until February 8, 2022 and the charges were ultimately dismissed. (Docs. 25 and 28).

At a City Council meeting later on November 23, 2021, Madison, the Selma City Attorney, added an extra item to his oral presentation stating Blackmon violated the terms of his videography contract. (Docs. 25 and 25-1). Because the topic was added, the Council did not have an opportunity to review any report on the issue prior to Madison's statement being made publicly and Blackmon did not have an opportunity to respond. (Doc. 1-1).

On December 3, 2021, Madison sent Blackmon a letter via certified mail informing him that he had breached his contract with the City, and therefore his contract was being terminated. (Doc. 24-4). The letter indicated that Blackmon breached the contract by the following: (1) selective editing of video of Council meetings, work sessions, and committee meetings with editorial comments, (2) linking his own Facebook pages to the City's webpages or website, and (3) using video he recorded pursuant to the contract on his personal social media pages. The Council was not involved with or aware of the letter being sent to Blackmon. (Doc. 1-1). Although, Blackmon received the termination letter, he continued to perform under the contract and request payment for his services. (Doc. 28). According to Blackmon, he did not accept the termination letter because Council members continued to tell him the contract was still in effect. (*Id*.).

On December 28, 2021, Blackmon sent the City a letter informing it that withholding his payments was a violation of the law and requesting payment for invoices submitted by the end of the business day.  (Doc. 1-1).  The following day, Blackmon's check for payment was stopped by Madison and Madison directed the treasurer (Smith) not to cut checks for continuing invoices submitted by Blackmon.  (Doc. 28).  On January 20, 2022, Blackmon sent a second letter to the City which stated: "[t]his letter is to demand that the workplace harassment and retaliation that I am experiencing from the City of Selma stop immediately" and notified the City that he was seeking a legal remedy due to not being compensated. (Doc. 1-1).

On January 11, 2022, in a public council meeting, Madison commented that Blackmon had asked for information from various city departments and engaged in various other behaviors such as: insisting and demanding, disrupting, banging on doors, shouting, and intimidating.  (Doc. 1-1). Video/audio recordings exist as to each occasion Blackmon visited City Hall. (Doc. 28-1). During the meeting, Perkins additionally stated that a contractor does not have authority to set up an official media page for the City of Selma.  (Doc. 28). Perkins additionally stated that Blackmon was posting disparaging information about the City and commented that the City should not be paying someone to say disparaging things about the City. (Doc. 28).  Finally, Perkins stated he terminated Blackmon's Contract.  (Doc. 28).

On January 28, 2022, Blackmon's family were the victims of phone scam wherein an unidentified caller indicated to Blackmon that his daughters were being held hostage and demanded ransom.  Blackmon called 911 but ultimately reached his home prior to any police officers and discovered the call was not real.  (Docs. 1-1 and Doc. 28-1).

On February 8, 2022, while in council chambers between two council meetings, Blackmon

discussed the phone call with the Chief of Police in the vicinity of Perkins. Blackmon suggested that the administration should be considered as behind the threat. (Doc. 1-1). When the council meeting for the evening ended, Blackmon was arrested on the warrant from November 2021 (of which he had been unaware, despite being in City Hall numerous times since November). (Doc. 28-1).

On May 24, 2022, aware that Blackmon had not been paid for services rendered, the Council voted to pay off the remainder of Blackmon's contract in full in the amount of $11,309.70. Following the meeting, Smith informed Blackmon the check would be ready on "Friday". (Doc. 28). On May 27, 2022, Blackmon visited Terri Smith, the City Treasurer, at City Hall to pick up his check for payment of services under the contract. (Doc. 25). Smith informed Blackmon that she did not have his check. (*Id*.). Blackmon informed Smith that it was her job to give the check to the person it was written to. (Docs. 1-1 and 28-1). Following the encounter, Blackmon left. (Doc. 25).

On June 2, 2022, Blackmon returned to City Hall to again retrieve his check. (Docs. 25 and 28). Smith again informed Blackmon that she did not have his check, and that Blackmon would need to speak with Perkins about his check. (Docs. 1-1 and 25). Blackmon Informed Smith that she was mishandling his check. Following the June interaction between Blackmon and Smith, Smith filed charges for harassment against Blackmon, which resulted in an arrest warrant signed by a Magistrate being issued. (Doc. 25 and Doc. 28-1). A trespass order was additionally entered prohibiting Blackmon from visiting City Hall when Smith was present. (*Id*.). Upon learning of this warrant, Blackmon turned himself in on June 6, 2022. Ultimately, Blackmon was found not guilty. (Doc. 25). However, while the trespass order was pending, Blackmon had to arrange for someone

else to record and live stream City Hall events pursuant to the contract at his own expense.  (Doc. 1-1).

Collectively, based on the above events, Blackmon has asserted the following claims:

1. Violations of his Fourth Amendment rights against Brown and Smith;
2. Violations of his First Amendment rights;
3. Breach of Contract against Perkins, Madison, and Smith; and
4. Defamation against Perkins and Madison.

Defendants seek summary dismissal as to each and every claim.  (Doc. 24).

## II.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.' " *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Anderson*, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 870 (11th Cir. June 24, 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d

994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

Relevant here, a *pro se* litigant's "pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Regarding summary judgment, even though *pro se* pleadings are entitled to a more lenient interpretation, "a *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Rather, a *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

## III.    ANALYSIS

Defendants Brown and Smith contend any claims based on violations of the Fourth Amendment are due to be dismissed because they are each entitled to qualified immunity. (Doc. 25). Plaintiff contends immunity does not defeat his claims.  (Doc. 28, generally).

### A.  Qualified immunity

"Qualified immunity is an affirmative defense to a § 1983 action against a government official sued in his or her individual capacity." *Adams v. Franklin*, 111 F.Supp.2d 1255 (N.D. Ala. July 31, 2000) (citations omitted).  To be protected by qualified immunity, the government official

must first demonstrate that he was acting within the scope of his discretionary authority. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). To determine whether an official claiming qualified immunity was performing a discretionary duty, the court must consider: (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority. *Id*. at 1282. If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)

To meet his burden, a plaintiff must first show that a defendant's conduct violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Second, a plaintiff must show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "For an asserted right to be clearly established for purposes of qualified immunity, 'the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law.'" *Jackson v. Sauls*, 206 F.3d 1156, 1164-65 (11th Cir. 2000)(citations omitted). "Additionally, the standard for determining if an officer violated clearly established law is an objective one and does not include inquiry into the officer's subjective intent or beliefs." *Id*. at 1165.

Although, Plaintiff categorically states Brown and Smith were not performing discretionary functions, the record belies this argument. Here, both Brown and Smith were performing job-related functions within their power when they encountered Blackmon. Accordingly, the Court is satisfied that they were performing discretionary duties. As a result, the

inquiry moves to whether Defendants violated a clearly established constitutional right.

### 1. Plaintiff's Fourth Amendment Claims

Plaintiff's complaint asserts Fourth Amendment claims against Brown and Smith.  The Court will address each Defendant separately.

### a. Brown

With respect to the Fourth Amendment, Plaintiff alleges that on November 23, 2021, "Mr. Blackmon exercised his 4th [A]mendment right by refusing to sign the visitors log or fill out the covid information sheet while entering the building."  (Doc. 1-1 at 5).  After his refusal, a warrant was filed for Mr. Blackmon's arrest for obstructing governmental operations.  (*Id*.) The case was ultimately dismissed.   In his arguments, Plaintiff appears to present two grounds for a Fourth Amendment Violation by Brown.  (Doc. 28).  First, Plaintiff contends his rights were violated when he was told to sign in and complete a Covid-19 questionnaire.   Second, Plaintiff contends he exercised his First Amendment Right by videotaping a public official in a public space, which did not create probable cause for his arrest.   At the hearing, Plaintiff argued that his Fourth Amendment claim is based on his being required to sign in when entering City Hall and Brown's signing in for him when he refused.  He stated he was at City Hall for official business, and he felt like his rights were violated because he was being tracked. He made no argument at the hearing that his later arrest violated his Fourth Amendment rights. Nevertheless, in an effort to be thorough, and because the same is insinuated by the Complaint, the Court will address all three potential violations.

### 1. Plaintiff's refusal to Sign-in

According to Plaintiff, Brown's collection of private and confidential information as a prerequisite to enter City Hall was a violation of the Fourth Amendment. (Doc. 28). As a result, Plaintiff refused to sign in or complete the Covid-19 questionnaire. (*Id*.).

Plaintiff has not presented any evidence to support either that Brown's request that Blackmon sign in before entering or Blackmon's refusal to sign in or complete the questionnaire violated his Constitutional rights. The record reflects that when Plaintiff refused, he still entered City Hall. He was not stopped or seized, and he was not forced to complete the questionnaire. As a result, to the extent Plaintiff's Fourth Amendment claim against Brown is based on his being asked to and refusing to sign in to City Hall, there is no evidence support the action resulted in a constitutional violation, much less a clearly establish constitutional violation. Accordingly, any claim based on Brown's request, or Blackmon's refusal to sign in before entering City Hall fails as a matter of law.

### 2. Plaintiff's videotaping

Plaintiff additionally contends that his videotaping of Brown was nothing more than the exercise of his First Amendment Right to record officials working in their official capacity which was not illegal and therefore, Brown's arrest warrant lacked probable cause. (Doc. 28 at 5). Again, there is simply no evidence that Plaintiff's videotaping on November 23, 2021, led to a violation of Plaintiff's Fourth Amendment rights. Blackmon was not prevented from videotaping, his equipment was not taken, and he was not detained or even prevented from videotaping in

any way.[2]   To the extent Blackmon contends he was retaliated against (by being arrested) based on his exercise of his First Amendment right (to video tape), such a claim would arguably be considered as a First Amendment retaliation claim, not a Fourth Amendment false arrest claim.[3] As a result, Brown is entitled to summary dismissal of any Fourth Amendment Claim based on Blackmon's recording in City Hall because Blackmon has not established a clearly established constitutional violation occurred.

### 3.   Plaintiff's Arrest

To the extent Blackmon's Fourth Amendment claim is based on his eventual arrest for his interactions with Brown on November 23, 2021, summary dismissal is warranted.

First, because Blackmon was arrested subject to an arrest warrant, his claim is for malicious prosecution, not false arrest.  *See Carter v. Gore*, 557 Fed. App'x 904, 910–11 (11th Cir. 2014) ( "[. . .] where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest.).   "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable *seizures* in addition to the elements of the common law tort of malicious prosecution." *Wood v. Keesler*, 323 F.3d 872, 881 (11th Cir. 2003).  [T]he constituent elements of the common law tort of malicious prosecution include: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that

---

[2] To the extent that Blackmon contends his videotaping led to him being falsely arrested or maliciously prosecuted, that claim is analyzed herein below.

[3] The Court does not specifically address the merits of Plaintiff's potential First Amendment claims for the reasons stated in section III(A)(2).  However, of note a "retaliatory prosecution claim" is defeated by the existence of probable cause.  *See Wood v. Keesler*, 323 F.3d 872, 883 (11th Cir. 2003).

terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id*. at 881-82.

However, "the existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider*, 618 F.3d 1240, 1256 (11th Cir. 2010) (citing *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008)). "'Probable cause' is defined as 'facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Grider*, 618 F.3d at 1256 quoting *Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (alterations supplied).  Even without actual probable cause, an officer is entitled to qualified immunity if "arguable" probable cause existed." *Grider*, 618 F.3d at 1257 (citation omitted).  "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.' " *Grider*, 618 F.3d at 1257 (citation omitted). "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime."  *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir.2004).

With respect to his arrest, Blackmon argues only that his actions did not meet the criteria for obstructing governmental operations.  This argument, however, is misplaced because to overcome summary dismissal, Blackmon must establish - not that he was innocent of the alleged crime- but that there was a lack of arguable probable cause for the institution of criminal proceedings against him, resulting in a constitutional violation. *See Wood*, 323 F.3d at 881-82.

Under Alabama law, a person commits the Class A misdemeanor of obstructing governmental operations if, "by means of intimidation, physical force, or interference or by any

other independently unlawful act, he ... (1) intentionally obstructs, impairs, or hinders the administration of law or other governmental function; or (2) intentionally prevents a public servant from performing a governmental function." Ala. Code § 13A-10-2. A governmental function is "[a]n activity which a public servant is legally authorized to undertake on behalf of Government." Ala. Code § 13A-10-1(2), (3), (7). Alabama Courts have recognized that "§ 13A-10-1(2) requires that interference be physical interference and that words alone fail to provide culpability under § 13A-10-1(2)." *D.A.D.O. v. State*, 57 So. 3d 798, 806 (Ala. Crim. App. 2009).

Here, after the encounter with Blackmon, Brown filed a Complaint detailing his interactions with Blackmon. Namely, Brown indicated that Blackmon intentionally prevented Brown from performing a governmental function by "instructing visitors to Selma City Hall not to sign the visitor log" [...] and on another date "declined to sign the sign in sheet nor would he answer the questionnaire". Blackmon then pulled out his phone and started recording and Brown asked him to stop, but Blackmon stated he was allowed to videotape. (Doc. 28-1). Based on Brown's description of the interaction, an arrest warrant was signed by a Magistrate. (*Id.*) Blackmon does not argue that the statement by Brown on which the warrant was based was false, misleading, or omitted critical components. Instead, he argues only that his actions did not establish probable cause. This Court is not convinced. Here, Brown, a security guard was tasked with insuring visitors sign in to City Hall and Blackmon attempted to dissuade visitors from following Brown's instruction. As a result, it was not unreasonable for Brown to believe Blackmon was obstructing governmental operations. Moreover, Brown's truthful accounting of his interaction with Blackmon informed a Magistrate to find probable cause existed. "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Illinois v.*

*Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331 76 L.Ed.2d 527 (1983) quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).   As a result, the Court is satisfied that Brown had at least arguable probable cause, if not probable cause, to file his complaint which led to Blackmon's ultimate arrest. Because Blackmon has not shown the violation of a clearly established Fourth Amendment right, Brown is entitled to summary dismissal of Blackmon's § 1983 false arrest/malicious prosecution claims against Brown.

### b.  Smith

The Fourth Amendment claim made against Smith relates to the interaction between Plaintiff and Smith after the alleged termination of Plaintiff's contract.  According to Blackmon, he was arrested as a result of his interactions with Smith on May 27, 2022, and June 2, 2022. Blackmon acknowledges he went to Smith's office multiple times to check on the status of his check.   He does not contest the veracity of the statements made by Smith to the police in instigating charges for harassment.  Instead, he responds that his interactions with Smith were not harassment. (Doc. 28).

The undisputed evidence shows that Smith filed a complaint against Blackmon based on her interactions with him.  The complaint was reviewed by a Magistrate and ultimately resulted in an arrest warrant for harassment being issued.  As with Brown above, because Blackmon's arrest was based on an arrest warrant, his claim is one for malicious prosecution. *See Carter*, 557 Fed. App'x at 910–11.  Accordingly, in order to establish his Fourth Amendment rights were violated based on his arrest, Plaintiff must show a lack of probable cause. *See Wood*, 323 F.3d at 881-82.

In Alabama, "[a] person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he . . .[d]irects abusive or obscene language or makes an obscene gesture toward another person."  Ala. Code § 13A-11-8(a)(1).  The Complaint filed by Smith states as follows:

> "On Friday, May 27, 2022, Mr. Blackmon came to the finance office to pick up a check. I told him the Mayor has your check and he would like to speak to you. He refused and left. He came by later with police for them to go to the Mayor's office to get the check. They spoke with him and later they left.  On Thursday, Jan. 2, 2022[,] Mr. Blackmon returned demanding I go to the Mayor's office to get his check. I let him speak and I returned to my office. Minutes later he was still standing outside the door waiting and I called the police."

(Doc. 28-1)[4].  On May 3, 2022, a Warrant of Arrest was signed by a Magistrate Judge and issued for Blackmon for the charge of Harassment.  (*Id*.).

Blackmon has not established that there was a lack of arguable probable cause for the institution of criminal proceedings against him by Smith.  Because such is his burden, summary dismissal is warranted.  Moreover, despite Blackmon's assertion that he is not guilty of harassment, the undisputed record reflects he was arrested pursuant to an arrest warrant signed by a Magistrate based on Smith's truthful accounting of her interactions with Blackmon.   "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" *Tucker* at 1332 quoting *Gates*, 462 U.S. at 236, 103 S.Ct. 2317.  As a result, the Court is satisfied that at least arguable probable cause, if not probable cause existed.  Accordingly, Blackmon has not established a Fourth Amendment violation and Smith is entitled to summary

---

[4] Neither party dictated Smith's handwritten complaint.  To the extent that an error exists, it is immaterial to the analysis herein above.

dismissal of Blackmon's § 1983 false arrest/malicious prosecution claims.

## 2.    Plaintiff's First Amendment Claim(s)

Defendants seek summary dismissal of Plaintiff's First Amendment claims based on Plaintiff's deposition testimony. Specifically, the relevant testimony states as follows:

> Q: Okay. Well. Im just going to put Number 24 on this and I understand your complaint mentions the first amendment but there's nobody being sued for first amendment stuff as it stands –
>
> A: As it stands as of right now.

(Doc. 24-7 at 61). To properly consider the above, a review of the history of this potential claim is necessary. First, it is clear that Plaintiff's Complaint alleges his First Amendment Rights were violated. (Doc. 1-1). Second, in previously examining the allegations of the Complaint to determine whether remand was necessary, this Court detailed that Plaintiff alleged violations of his First Amendment Rights. (*See* Doc. 20). In fact, the Court's Order followed from *Defendant's* own position that Plaintiff pled violations of his constitutional rights. (*See* Doc. 10). Moreover, after acknowledging Plaintiff's arguments on remand, this Court permitted Plaintiff an opportunity to remove any constitutional violations which were unintentionally pled, and Plaintiff made no such effort to change his Complaint. (Doc. 20, n. 1).

Once the remand issue was resolved, this case moved forward with discovery, including the taking of Plaintiff's deposition where the above exchange took place. Defendants then filed the instant motion for summary judgment seeking dismissal of any First Amendment claim(s) because, they argued, no such claims exist based on Plaintiff's testimony. Plaintiff filed a response in opposition to the instant motion. (Doc. 28). In the first portion of Plaintiff's

"Argument" he states summary judgment should be denied because "William Brown filed a complaint against Blackmon based on constitutionally protected activity [. . .]". (*Id*. at 5). Blackmon then cites to the First Amendment and asserts that his exercise of his First Amendment right to inform people of their rights did not amount to probable cause for his arrest.[5]   Later, Blackmon asserts that the termination of his contract by the City was the result of retaliation for his exercise of his First Amendment rights.   (Doc. 28 at 10).  Blackmon's video exhibits in support of his response additionally include statements that Plaintiff was arrested a second time in retaliation for exercising his First Amendment Rights.

At the hearing on the instant motion, the Court specifically stated its concern with Defendants' position with respect the First Amendment claim(s).   Defendants referenced Plaintiff's deposition testimony.  However, at the hearing Plaintiff never stated that he withdrew his First Amendment claim(s).  He did, however, argue that Perkins cancelled his contract with the City because Blackmon was supposedly saying disparaging things about the City (via a video made by his daughters on ADA compliance).

The Court has serious concerns over Defendants' position that no First Amendment claims exist.  The record, as a whole, indicates such a claim does exist.  Moreover, the single sentence of the deposition testimony relied upon for dismissal, lacks clarification.  In that respect, it is not discernible whether Plaintiff understands that the assertions he has made potentially fall under the First Amendment, as opposed to the Fourth Amendment. Finally, Plaintiff filed a response to Defendants' motion and provided the Court with exhibits which repeatedly mentioned that Plaintiff was retaliated against for exercising his First Amendment rights.  As a result, even with

---

[5] *See* footnote 4.

the deposition testimony, there remains conflicting record evidence over the claim(s).  As a result, the Court is not inclined grant dismissal of a claim based on a single sentence in the deposition of a *pro se* Plaintiff when the arguments and evidence before the Court demonstrate a conflict as to the existence over said claim.  Further, Defendants made no effort to seek summary dismissal of any First Amendment claims on the merits, which is the only ground for dismissal based on Rule 56.  As a result, there are no arguments before this Court to analyze whether Plaintiff's claim(s) should otherwise survive.  Without such arguments, dismissal is not warranted.

### B.  State Law Claims

Plaintiff's complaint includes state law causes of action for breach of contract against Smith, Perkins, and Madison and defamation against Perkins and Madison.  All claims are asserted against Defendants in their official and personal capacities.  Defendants first contend that Plaintiff has not established his claims for breach of contract and defamation. Next, Defendants argue all claims made against them in their personal capacities are due to be dismissed as a matter of law because each of the Defendants are entitled to state agent immunity.  (Doc. 25 at 15).

### 1.  Breach of Contract

According to Defendants, Plaintiff has asserted a breach of contract claim against Smith, Perkins, and Madison, all of which are due to be dismissed because evidence shows (1) Blackmon breached the contract for the City and (2) Perkins had executive authority to terminate the contract.  (Doc. 25 at 11).   In response and at the hearing, Plaintiff argued that even if Perkins had authority to terminate his contract, evidence shows Blackmon did not breach the terms of

the contract with the City.  (Doc. 28).

In Alabama, the elements of a breach of contract claim are "(1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002).  Where "the defendant has agreed under the contract to do a particular thing, there is a breach and the right of action is complete upon his failure to do the particular thing he agreed to do." *Cunningham v. Langston, Frazer, Sweet & Freese, P.A.*, 727 So. 2d 800, 805 (Ala. 1999)

Here, even assuming Perkins, as mayor, has authority to terminate a contract, as Defendant argues, there remains a question of fact as to whether the contract was breached by Plaintiff.  More specifically, Plaintiff has set forth facts supporting that (1) he fulfilled his contractual obligations, (2) the cessation of his duties upon receipt of the termination letter could potentially subject him to future liability for breach, and (3) that he was not paid for his services pursuant to the contract.  (Doc. 28 and 28-1).  At the hearing, Defendants did not offer any argument to rebut that a material dispute likely exists on this claim. As a result, a material dispute of facts exists as to whether a breach occurred, warranting a denial of Defendant's motion for summary judgment on this claim.

### 2.  Defamation

Defendants seek summary dismissal as to any/all of Plaintiff's defamation claims against Madison and Perkins because they assert all statements made that Blackmon breached the contract were true.  (Doc. 25 at 13-14; Doc. 35 at 6). Next, Defendants contend any defamation claim based on Perkins' or Madison's description of Blackmon "yelling and banging on doors" was true as confirmed by the affidavit submitted by Debra Mosely and Terri Smith. (Doc. 25 at 14;

Doc. 35 at 7).   Third, Defendants argue that two other statements made by Perkins (1) that Perkins told the Selma City Council that Blackmon made disparaging comments about the City and (2) that Perkins stated that the obstruction of justice charges did not go to court but was dismissed by the court, were opinions or an attempt by Perkins to state what happened, respectively.   (Doc. 25 at 14-15).   Fourth, Defendants argue regardless of truth, Plaintiff's defamation claims fail because he has not shown he suffered any special harm.  (*Id*. at 15).

In response, Plaintiff argues there was no truth to the statements made by Perkins and Madison.  For support, Plaintiff has provided evidence that he did not breach his contract and that there was an ulterior motive to cancel his contract.  Plaintiff has additionally submitted video/audio evidence that he was never disruptive at City Hall as Defendants allege.[6]

To survive summary judgment on a defamation claim under Alabama law, the plaintiff must show "(1) that the defendant was at least negligent, (2) in publishing (3) a false and defamatory statement to another (4) concerning the plaintiff, (5) which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod)." *Bell v. Smith*, 281 So. 3d 1247, 1253 (Ala. 2019). It is well established that truth is a complete and absolute defense to a defamation claim.  *See Battles v. Ford Motor Credit Co.*, 597 So. 2d 688, 692 (Ala. 1992).

Here, Defendants Perkins and Madison argue that Plaintiff has failed to establish that they made any false statements about him.  (Doc. 25 at 14).  For support, affidavits of Madison, Debra Mosely (Madison's assistant) and Smith have been submitted.  In response, Blackmon has

---

[6] Plaintiff's response references more statements than the statements referenced in Defendants' motion.  The Court will only consider dismissal of Plaintiff's claims based on those statements which were specifically addressed by Defendants' motion.

presented facts disputing he breached the contract and video and/or audio footage of the relevant council meeting and events referenced in the affidavits of Mosely and Smith. This Court has already determined a question of material fact exists as to whether Blackmon breached the contract. Similarly, a question of material fact exists as to the truth of the allegedly defamatory statements. As a result, summary judgment is not warranted on Plaintiff's defamation claims on the basis that the statements were true.

Alternatively, Defendants contend Blackmon's defamation claims fail because he cannot show he suffered any special harm. (Doc. 25 at 15). Defendants do not cite to any authority to support their position. More specifically, Defendants make no argument as to whether or why the allegedly defamatory statements are defamation per se, not requiring a show of special harm or defamation per quod, requiring a showing of special harm. Given the lack of legal support or analysis as to how and/or why Plaintiff has failed to establish an element of his claim, the Court is not inclined to grant summary judgment on the merits on that basis.

Finally, Defendants contend the that the statements of Perkins on which Blackmon's defamation claims depend are clearly opinions and, therefore subject to dismissal. Again, Defendants cite to no authority to support their position. The first statement by Perkins was that Plaintiff made disparaging statements against the City. The second statement was that the Obstruction of Justice charge did not go to court but was dismissed. According to Defendants, Perkins' first statement was an opinion, and his second statement was an *attempt* to say that there was not a trial because the charge was dismissed. (Doc. 25 at 15).

"Whether a given representation is an expression of opinion or a statement of fact depends upon all the circumstances of the particular case, such as the form and subject matter

of the representation and the knowledge, intelligence and relation of the respective parties. The mere form of the representation as one of opinion or fact is not in itself conclusive, and in cases of doubt the question should be left to the jury." *Bell*, 281 So. 3d at 1255. (citations and quotations omitted).  Because Defendants have not articulated why the relevant considerations support the position that the statements were opinions, they have failed to establish that summary dismissal is warranted for that reason.

### 3.  State Agent Immunity

Finally, Defendants contend that all state law claims made against them in their personal capacities are due to be dismissed as a matter of law because each of the Defendants are entitled to state agent immunity.  (Doc. 25 at 15).  More specifically, Defendants argue immunity applies because "there is no doubt that all Defendants were acting on behalf of the City of Selma when the actions giving rise to Blackmon's claims occurred."  (*Id*.).  Plaintiff did not specifically address state agent immunity in his response.

"State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles*, 852 So. 2d 117, 122 (Ala. 2002). Under Alabama law, state agents "shall be immune from civil liability" in personal-capacity suits where the conduct forming the "basis of the claim against the agent" falls within any of the five following categories: "(1) formulating plans, policies, or designs"; "(2) exercising his or her judgment in the administration of a department or agency of government, including but not limited to, examples such as: [. . .] (c) negotiating contracts"; "(3) discharging duties imposed on a department or agency by statute, rule, or regulation"; "(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement

officers' arresting or attempting to arrest persons"; or "(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (plurality op.); *see also Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000) (majority adopting *Cranman* test). However, state-agent immunity "shall not" attach if "the [s]tate agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Cranman*, 792 So. 2d at 405.

The state-agent-immunity doctrine "ha[s] established a 'burden-shifting' process when a party raises the defense." *Garcia v. Casey*, 75 F.4th 1176, 1191-91 (11th Cir. 2023) quoting *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). "Under that framework, the defendants 'bear the burden of demonstrating that [plaintiffs'] claims arise from a function that would entitle them to immunity.'" *Id*. "'If the [defendants] make such a showing, the burden then shifts to [plaintiffs], who, in order to deny [defendants] immunity from suit, must establish that [defendants] acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority.'" *Id*.

Here, Defendants categorically state that all Defendants were acting on behalf of the City when the events underlying Plaintiff's claim occurred. (Doc. 25).  Certainly, as Defendants point out, when the conduct made the basis of the claim is "negotiating contracts" immunity applies as set forth in *Ex Parte Cranman*.  However, lacking from Defendants position is any factual support that Madison's, Perkins', or Smith's interactions with Plaintiff involved "negotiating contracts".  As a result, although Plaintiff does not address state agent immunity in his response, Defendants have failed to meet their burden that their conduct entitles them to immunity as a

matter of law.

### 4.    Political Retaliation

In response to Defendants' motion for summary judgment, Blackmon argues that summary judgment should be denied because evidence shows political retaliation by Perkins against Blackmon.  (Doc. 28 at 18-21).  Defendants then argue in their reply, that any political retaliation claims are "unfounded and baseless",[. . . ] "meritless and due to be dismissed." (Doc. 35).

As an initial matter, Defendants motion for summary judgment made no mention of a claim for political retaliation nor sought dismissal thereof and any argument for dismissal raised for the first time in their reply brief need not be considered. *See Parker v. Exterior Restorations, Inc.*, 653 F.Supp.3d 1105, 1108 (S.D. Ala. January 24, 2023) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.")(citation omitted).  Next, Defendants' position that Blackmon's claim for political retaliation is baseless because it is demonstrated only by a timeline of events and not legal analysis is curious, because Defendants' reply equally lacks any legal analysis to support dismissal.  Moreover, the events described in Blackmon's timeline are substantiated in large part by the video evidence submitted with his response.  Finally, Defendants position that no political retaliation claim can survive because Blackmon's contract was terminated based on Blackmon's breach is disputed for all of the reasons stated herein above.   Nevertheless, neither party has provided any legal authority as to the elements of a "political retaliation" claim or any analysis on whether such a claim survives on the merits, even if the claim were considered despite being raised for the first time in a reply brief.  Accordingly, to the extent Defendant seek dismissal of such a claim, dismissal is not

warranted. [7]

## IV.   CONCLUSION

For the reasons stated herein below, Defendants' Motion is **GRANTED in part and DENIED in part**.

**DONE and ORDERED** this 11th day of June, 2025.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] To be clear, the Court makes no comment on whether such a claim exists.  Rather, the Court concludes it cannot dismiss any alleged claims under Rule 56 given the filings before it. Further, to the extent that any "political retaliation" claim is one asserted under the First Amendment, this Court has already determined that any First Amendment claims are not due to be dismissed on the merits.